*ROANE, Judge.
After stating the case, proceeded as follows :
The first question which occurs in this case is, whether the plea is good in itself? And, if not, then, secondly, whether it is cured by the verdict, under the statute of amendment and jeofails?
As to the first question, the general issue, in trespass, is not guilty: Which denies the trespass, stated in the declaration; and imposes on the plaintiff the necessity of proving it; at the same time that it gives him an opportunity of knowing to what point to apply his evidence. On the contrary a plea of justification admits the taking, but sets up a new ground shewing it to be justifiable.
On general principles it is as necessary, that the plaintiff should be informed, by the plea, of the particular justification set up, in order that he may know how to rebut it, as it is that the defendant should be informed, by the declaration, of the particular trespass alleged, in order that he may deny, or justify it. The principle end of pleading is frustrated, whensoever the one, or the other, is so general as not to shew the adverse party, the particular ground which is relied on.
*349 These general principles are fully supported by authority. For the books uniformly prove, that, if a defendant has a special justification, he must plead it. 2 Esp. 102. Nor do I recollect, to have, any where, seen, a plea of justification like the present.
The question then is, how does this illegal plea stand, upon the statute of jeo-fails? The words of the act are indeed very large, as a verdict, under it, goes to cure mispleading, insufficient pleading, discontinuance, misjoining of issue &c.
But even upon the text of the statute itself, these extensive words, mispleading and insufficient, might, perhaps, be deemed to be restrained to defects, which do not go to the gist of the action or *plea, by being coupled with discontinuance, misjoining of issue, lack of warrant of attorney &c. ; which are mere secondary and inferior defects, and, wisely, not permitted to prevail after verdict.
This, however, is on the mere text of the act; but on the reason and design of it, shall a construction be given, which will frustrate the end of all pleadings, and authorize a judgment, when it does not appear to the court, that a judgment ought to be rendered?
It has often been decided here, that a verdict did not cure a declaration, which omitted to set out the git of the action. The same principle will extend to the case of a plea, which does not set out the git of the defence. In both cases a degree of particularity and certainty is necessary, not only, that the adverse party may know precisely what to answer (the end and object of special pleading,) but that the court may not pass judgment in a case, which does not appear to them, to warrant it: And that, they may not, as for example, in the case before us, discharge a defendant, on a plea of justification, unless, there appears a good justification, in point of law.
These principles have had the sanction of this court, in the cases of Winston v. Francisco;* Chichester v. Vass† and Baird v. Mattox.‡ To the course of reasoning, in which cases, I beg leave to refer, by way of explaining the ground of my present opinion, and to save time.
The Court therefore ought to have awarded a repleader, the plea in question being so substantially defective, that a final judgment, thereupon, ought not to have been given, for the defendant.
*But another point was made, by the plaintiff, and determined against him, as appears by the bill of exceptions, relative to the competency of a witness. Which point is necessary to be now decided, since if the Court erred therein, a direction should be given to reject the witness, on a future triai.
It is necessary to consider in what sense the -word “established” is used in the bill of exceptions, as relative to the corner trees in question. If the effect, of the witness’s testimony would be, so to establish it as to shut up the point, in all future enquiries, on the subject; so to establish it, as that the verdict could hereafter be given m evidence, in favor of the witness, or his representatives, then clearly, he was an interested witness and ought to have been rejected; but if the word only purported an establishment of this fact, as between the then parties and in that suit, then I think, a contrary conclusion will follow.
The last is the only sense in which the word could be understood, without infringing the plainest principles of law. And we must suppose the witness so understood it, as the contrary does not appear. If it did, I will not say, how far his testimony might be impeached, in consequence of his thinking himself really interested, when in fact he was not.
That the word must be understood in the last sense seems clearly to follow from these considerations. That a verdict can never be given in evidence, but between those who are parties, or privies, to it. Bull 233. If the present witness should ever have a controversy, concerning his land, involving the line tree in question, it would most probably not be with the plaintiff, or his representatives. It is not stated, that in that case, the controversy would be with them; and we cannot infer it. If so, the opposite party, in that future ^action, would be an utter stranger to the fact, put in question, on the former trial. It would, in the language of Buller, be, as to him, res nova; and he would be bound by a decision, which neither he, nor those under whom he claims, had the liberty to controvert; than which, says, the same writer; nothing can be more contrary to natural justice.
I assume it then, as a clear and incontrovertible position, that this verdict could never be used in favor of the witness, especially', in a contest with those, who are strangers to the present plaintiff. And if so, how does the case stand with reference to the most approved decisions? In questions, concerning'the bounds of evidences there is a considerable degree of contrariety and contradiction. I have examined many' cases ancient and modern, and I infer, that the modern doctrines entirely sustain my present opinion; and that few, if any, of the ancient cases conflict with it, when we go into the reasons, on which, such decisions are founded.
The case of Bent v. Baker, 1 Term Rep. 27, is very full, and the most modern, which I have seen, upon the subject; and I entirely concur with the opinion of the judges therein ; especially, those of Lord Kenyon and Mr. Justice Buller. The former Judge has forfeited his opinion, with the high authority of Lord Mansfield and Lord Hardwicke, in the several cases of Walton v. Shelley, and The King v. Bray; particularly referring those, to whom my opinion is addressed, to the case of Bent v. Baker throughout, I beg to select such passages and doctrines, therefrom, as are decisive, with me, in the present case; without, now, specifying, individually, from which of those eminent judges the doctrines have fallen. I omit this, as being unnecessary, and for the sake of brevity. It is there stated, That many of the *350 old cases, on the subject of competency, have gone on 'very subtile grounds; but that, of late years, the *Courts have endeavored to let the objection go to the credit, rather than to the competency ; That whenever there are no positive rules of law, to the contrary, it is better to receive the evidence, making, nevertheless, such observations, on the credit of the party, as his situation requires. That respect, on this subject, is to be paid to the question put on a Voir dire; namely, whether he is really interested, in the event of the cause? which question involves all particular questions, “of how interested? &c.” and amounts to this, whether the record in that cause will affect his interest? That upon the ground of such record being admissible, only, has the case of commoners turned; they being incompetent witnesses, when such record can be used, but otherwise not. That where the proceedings in the cause cannot be used for the witness, he is competent whatever wishes he may entertain on the subject; which however may properly go to his credit. That on general grounds, in the case of under writers (which is very similar to this) there is no objection to one of them being examined for another, who has subscribed the same policy, notwithstanding a former case Ridout v. Johnston, which may have been determined on its own particular circumstances. That the true line is taken to be, whether the witness is to gain or lose, by the event of the cause? Which depends on the question (if the witness is not directly interested in that very cause,) whether the verdict could be used for, or against him, in a future suit? And Judge Grose says, in the same case, that it is better to narrow the objection to those cases, in which the witness is interested in the event of the cause, unless in those exceptions which have been established by solemn decisions.
Fortified by such reasoning and such authorities, which entirely accord with my own inferences from the just theory of evidence, I need not go into a particular analysis of some old cases, which may, on a slight view, appear to conflict with my present opinion. I am free to declare, ^however, that, on an attentive consideration of many of them, there are very few, if any, which do not appear clearly distinguishable from the present case; and particularly in that point, which respects the admissibility of the verdict on a future trial.
There is one possible point of view, occurring to me, in which the witness, in question, or his representatives, might be benefited by the testimony given, in the present cause: Which is this, that in questions concerning boundaries, at a great distance of time, traditionary evidence might, perhaps, be allowed concerning line trees; and this tradition might, possibly, in part, have arisen from the verdict found, on the testimony of- a person, who, or whose representatives, may be parties to the future suit. This X admit is a possible case, but it is so remote, contingent, and uncertain, as not to form an exception, from the doctrine just stated.
In Bull. n. pr. 284, it is laid down, “that an interest is said to be, where there is a certain benefit attending the determination of the cause one way;” and again.“thatut must be a present interest, for a future and contingent interest will not prevent a person from being a witness.”
These passages seem fully to justify my conclusion, as to the witness in question; and I think the District Court did right, in permitting him to be sworn in the cause.
In Meade v. Tate* in this Court, the judgment of the District Court was reversed, and that of the Countj Court, admitting the competency of a witness similarly situated, was affirmed; and upon the whole, I am of opinion,-that the witness, in the present case, was competent; but that a re-pleader should be awarded, on account of the defective pleadings.
*FLEMING, Judge.
The pleadings in this case are, clearly, too loose and indefinite. For the plea of the defendant only consists of the word justification ; and to this, the plaintiff replies generally: Upon which, the parties went to trial, without any particular fact being alleged, on either side, o.n which an issue could be joined. Of course, I am warranted, in saying,'that there was no issue joined; and therefore, that the judgment, upon that ground, ought to be reversed, and a re-pleader awarded.
I was at first inclined to think, that the objection to the witness went to his credit, and not to his competency; but, upon reflecting on his own declarations and his situation with respect to the controversy before the court, I am decidedly of opinion that he ought not to have been admitted. The reason why an interested witness is not admissible is, that there is a presumption, that his interest would produce an improper bias on his mind; and therefore, the law rejects him altogether. The slightest interest is sufficient for this purpose. Hence one commoner cannot be a witness to prove a right, in an action brought by another. For the right being entire, he comes to support his own title. So where lands lay in two parishes, the parson of one was not received as a witness ; because he might enlarge his own parish, and consequently the tythes. 2 Bac. ab. 590; 7 Mod. 63. Again a person, who had acted in breach of an alleged custom, was not held a competent witness, to disprove the existence of the custom, because, if the custom should not be established, he would be discharged from an action, on account of the breach. Dougl. 359. The principle of which cases seems, to me, to apply, expressly, to that under consideration. For in neither of them was the interest of the witness more immediate, than in the present case. He was only to be eventually affected; and that was the case here. The question was, whether No. 1, or No. 7, in the survey, was the true corner of Beverley *Manor; and the witness appears to have been materially interested, in that question. For, by his own confession, if No. 1 is the true *351 corner, he saves part of his land; but otherwise, if No. 7 be the corner. In this situation the presumption of bias is so strong, that it is sufficient, in my opinion, to repel him; especially, as his testimony went to prove, that No. 1, was the true corner; the very fact, which he was interested in having established. I think therefore, that he was incompetent, and ought to have been rejected.
CARRINGTON, Judge.
There can be no doubt, but that there must be a repleader. For the plea is unquestionably bad, and not cured by the statute; which was never meant to be extended to a case like this, where there is nothing certain or issuable in the pleadings.
But as to the point relative to the admissibility of the witness, I am equally clear, that he ought to have been received. For his interest cannot be affected, by this suit; inasmuch as the verdict and judgment in this case cannot be given in evidence, for, or against him, in a future action. I am therefore of opinion, that he was admissible ; and that the objection was matter of observation only; which went to his credit, and not to his competency.

3 Waskington’s Rep. 187.

1 Call’s Rep. 83.

Ibid. 357.

Ante 125.